IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

03    12376 WGY

State of North Dakota d/b/a )
North Dakota Mill & )
Elevator Association, )
                           )    MAGISTRATE JUDGE
                           )
           Plaintiff, )
    vs. )
                           )
Crystal Warehouse Corporation, )
                           )
          Defendant. )

**MEMORANDUM OPINION
AND ORDER**

Civil File No. A2-03-59

Before the Court is a motion by Defendant, Crystal Warehouse Corporation ("Crystal Warehouse"), to dismiss for lack of personal jurisdiction (doc. #5). Plaintiff, North Dakota Mill & Elevator Association ("North Dakota Mill"), filed a brief in opposition (doc. #11).

### BACKGROUND

North Dakota Mill is a State-owned milling facility located in Grand Forks, North Dakota. It processes crops grown by North Dakota farmers into flour and other food commodities, and then sells the commodities throughout the United States and around the world. North Dakota Mill contracts with warehouses in the United States for temporary storage of its goods. Defendant Crystal Warehouse owns and operates a storage warehouse in Wilmington, Massachusetts. It is undisputed that Crystal Warehouse does not have any offices, warehouses, or any other place of business in North Dakota. Crystal Warehouse offers various levels of service to its customers, including unloading and storing goods, inventorying goods, picking and packaging orders, loading trucks, and transporting goods. North Dakota Mill contracted with Crystal Warehouse for the temporary storage and handling of some of its food products.

North Dakota Mill initiated this action to recover money damages and expenses incurred

1

following an alleged rodent infestation at Defendant's warehouse. North Dakota Mill alleges rodents contaminated, damaged, and destroyed some of its food commodities stored in the warehouse. This lawsuit was originally filed in North Dakota State District Court in Grand Forks. Defendant subsequently removed it to United States District Court of the District of North Dakota, Northeastern Division, on the basis that diversity of citizenship and amount in controversy requirements were satisfied.

## ANALYSIS

### 1. Personal Jurisdiction

#### a. Applicable Standards

Defendant filed a motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(2), asserting this Court lacks personal jurisdiction. Defendant argues it does not have the requisite minimum contacts with North Dakota to subject it to jurisdiction here. Plaintiff, contrarily, argues Defendant has sufficient minimum contacts with North Dakota and should reasonably have expected to be haled into court in North Dakota to litigate a dispute such as this one.

Personal jurisdiction exists in the federal district of North Dakota if (1) the North Dakota long-arm statute[1] is satisfied and (2) the exercise of personal jurisdiction over the defendant would not violate the due process clause of the Fourteenth Amendment. Drayton Enterprises, L.L.C. v. Dunker, 142 F.Supp.2d 1177, 1182 (D. N.D. 2001). Because the long-arm statute in North Dakota has been construed to permit the exercise of personal jurisdiction to the fullest extent permitted by due process, we are left to decide whether the exercise of personal jurisdiction over Defendant in this

---

[1] North Dakota's long-arm statute, in relevant part, allows a court to exercise personal jurisdiction over a person: "(A) transacting any business in this state; (B) contracting to supply or supplying service, goods, or other things in this state; [or] C) committing a tort within or without this state causing injury to another person or property within this state. . . ." The exercise of personal jurisdiction over the person must not "offend against traditional notions of justice or fair play or the due process of law." N.D.R.Civ.P. 4(b)(2).

2

Court comports with due process. See Id.; see also Hebron Brick Co. v. Robinson Brick & Tile Co., 234 N.W.2d 250, 255-56 (N.D. 1975).

The due process clause limits the power of a forum state to assert personal jurisdiction over a nonresident defendant. Falkirk Mining Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 373 (8th Cir. 1990). In order for a state to properly exercise personal jurisdiction over a nonresident defendant, due process requires that the defendant have "certain minimum contacts" with the forum state such that the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). In analyzing "minimum contacts," the Supreme Court has said it is essential that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe Co., 326 U.S. at 319). This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely because of unilateral activity of a third person or as a result of random, fortuitous, or attenuated contacts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations omitted). Additionally, a defendant's conduct and connection with the forum state should be such that one would "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003).

When determining the sufficiency of a nonresident defendant's contacts, the Eighth Circuit has set out five factors the court should consider: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Drayton Enterprises, L.L.C., 142 F.Supp.2d at 1182 (quoting Guinness Import Co. v.

3

Mark VII Distrib., Inc., 153 F.3d 607, 614 (8th Cir. 1998)). The first three factors are of primary importance and given greater weight than the last two factors. Id.

"To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." Digi-Tel Holdings, Inc. v. Proteq Telecommunications, Ltd., 89 F.3d 519, 522 (8th Cir. 1996) (citations omitted). In analyzing the prima facie showing, the Court must view the evidence presented in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. Id. A plaintiff seeking the exercise of specific jurisdiction is required to make a more limited showing of jurisdiction than for general jurisdiction. Drayton Enterprises, L.L.C., 142 F.Supp.2d at 1183. The Eighth Circuit explained, in Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1103 (8th Cir. 1996), the distinctions between general and specific jurisdiction: "General jurisdiction refers to the power of a state to adjudicate any cause of action and does not depend on the relationship between the cause of action and the contacts." Specific jurisdiction, on the other hand, focuses only on the defendant's activities in the forum state and "due process is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities." Id.

     b.  Application

Crystal Warehouse asserts this Court does not have personal jurisdiction since it has virtually no connection to North Dakota. A food broker in Massachusetts put the two parties in contact with each other. Crystal Warehouse argues it is engaged solely in the business of operating a storage warehouse in Massachusetts and it did not purposefully conduct or direct any activities in North Dakota. Crystal Warehouse acknowledges it sent monthly invoices for storage and handling charges to North Dakota Mill and it notified North Dakota Mill if damaged goods were delivered to its

4

warehouse. Crystal Warehouse contends, however, these contacts were "perfunctory administrative" contacts arranged and at the direction of the food broker.

North Dakota Mill asserts Crystal Warehouse has sufficient minimum contacts with North Dakota and it should have reasonably anticipated being haled into court in North Dakota since Crystal Warehouse was providing services directly for the State of North Dakota. North Dakota Mill argues Crystal Warehouse purposefully directed its activities at North Dakota by mailing letters, including a promotional brochure, and other correspondence to North Dakota Mill. Further, Crystal Warehouse transacted business with the State of North Dakota by supplying services and goods to the State of North Dakota, and it committed a tort which it should have reasonably anticipated as having an impact on commerce in North Dakota.

Applying the five factors set out above, the Court finds factors one and three - the nature and quality of the contacts with the forum state and the relation of the action to the contacts - weigh against assertion of North Dakota jurisdiction. First, it is uncontroverted that Crystal Warehouse has no warehouses, offices, or salesmen outside of Massachusetts; therefore, to support its position that this Court can assert personal jurisdiction over Defendant, North Dakota Mill relies primarily on contacts documenting the storage arrangement between it and Crystal Warehouse. These contacts are in the form of telephone calls, faxes, e-mails, and letters. They include contacts such as a letter with an advertising brochure enclosed, a letter advising of the rate changes, storage billing invoices and copies of checks for payment, inventory count reports, e-mails concerning damaged goods, a handwritten log of telephone calls concerning a rodent infestation problem, and other lists compiled by North Dakota Mill's telephone carrier of faxes and telephone calls from North Dakota Mill to Crystal Warehouse.

The Court has reviewed the numerous exhibits indicating a history of faxes, telephone calls,

5

and correspondence back and forth between the parties. The exhibits presented by North Dakota Mill consist of routine business correspondence necessary for both parties to sustain their business operations. Although North Dakota Mill asserts these "contacts" are sufficient to establish minimum contacts, the Eighth Circuit has concluded that mail or telephone correspondence between the parties, alone, is insufficient to satisfy the due process requirement. <u>Porter v. Berall</u>, 293 F.3d 1073, 1076 (8th Cir. 2002) (stating contact by phone or mail is insufficient to justify the exercise of personal jurisdiction under the due process clause); <u>Burlington Indus., Inc. v. Maples Indus., Inc.,</u> 97 F.3d 1100, 1103 (8th Cir. 1996) (telephone contacts remain a consideration, but, alone, they are insufficient to confer personal jurisdiction); <u>Newhard, Cook & Co. v. Inspired Life Centers, Inc.,</u> 895 F.2d 1226, 1229 (8th Cir.1990) (noting regularly mailed correspondence, including disbursement checks, does not establish purposeful availment); <u>T.J. Raney & Sons, Inc. v. Security Sav. & Loan Assoc.,</u> 749 F.2d 523, 525 (8th Cir. 1984) (stating the use of interstate mail, standing alone, is insufficient to satisfy due process). Further, merely entering into a contract with a forum resident does not establish the requisite minimum contacts to support an assertion of jurisdiction over the nonresident party in the forum state. <u>Wines v. Lake Havasu Boat Mfg., Inc.,</u> 846 F.2d 40, 42 (8th Cir. 1988).

Additional evidence pointed to by North Dakota Mill to establish minimum contacts included e-mails indicating Crystal Warehouse returned goods damaged in transit back to North Dakota Mill and also that it shipped empty wooden pallets to North Dakota. Under the terms of the contract, North Dakota Mill required a pallet-for-pallet exchange between North Dakota Mill and its warehouse bailees. The Court finds this evidence is insufficient to establish Crystal Warehouse purposefully directed its activities at North Dakota. Thus, under the facts of this case, the Court concludes the nature and quality of the contacts alleged by North Dakota Mill are insufficient for this

Court to properly assert personal jurisdiction over Defendant.

Second, the Court analyzed the relation of the action to the contacts. This factor is essentially the question of specific jurisdiction. Drayton Enterprises, L.L.C. v. Dunker, 142 F.Supp.2d 1177, 1183 (D.N.D. 2001). The question, therefore, is whether the acts giving rise to the lawsuit constitute minimum contacts sufficient to convey specific jurisdiction. Id. North Dakota Mill seeks to recover money damages and expenses incurred as a result of an alleged rodent infestation. North Dakota Mill shipped its goods to Massachusetts to be temporarily stored. Crystal Warehouse contracted to temporarily store North Dakota Mill's products in Massachusetts. The alleged negligence occurred in Massachusetts. The direct connection to North Dakota asserted by Plaintiff is that the injury caused by the alleged tort will have an impact on commerce in North Dakota.

As noted earlier, almost every contact occurring between the parties was either by telephone, fax, e-mail, or letter. The specific contacts directly related to this action include a faxed letter from Crystal Warehouse advising of the rodent infestation problem; an e-mail with a picture attachment from Richard T. Cooper, Crystal Warehouse's director of marketing services, documenting problems at the substitute warehouse; and invoices for the shipping of salvageable food commodities to an alternate warehouse after the infestation. Again, the Court finds these contacts are insufficient to satisfy the due process requirement. Porter, 293 F.3d at1076; Burlington Indus., Inc., 97 F.3d at 1103; Newhard, Cook & Co., 895 F.2d at 1229; T.J. Raney & Sons, Inc., 749 F.2d at 525. Further, something more than "mere effects" of an alleged tort felt in a forum state is required to support jurisdiction. See Drayton Enterprises, L.L.C., 142 F.Supp.2d at 1185 (finding insufficient evidence to assert jurisdiction when there is no connection between a defendant and the forum state beyond the effects of an alleged tort). Thus, the Court concludes the relation of the cause of action to the contacts does not support an assertion of jurisdiction by this Court.

7

The second factor - the quantity of contacts - is thus the remaining basis for asserting jurisdiction over Defendant. North Dakota Mill asserts there is a history of "hundreds of faxes, hundreds of telephone calls, correspondence back and forth," and other items documenting the storage arrangement between the parties. The Court reviewed the numerous exhibits documenting the contacts asserted by North Dakota Mill and concluded they were of insufficient nature and quality for this Court to constitutionally exercise jurisdiction over Crystal Warehouse. Even if the quantity of contacts alleged by North Dakota Mill favor the exercise of jurisdiction, this factor, alone, is not determinative of the issue. See Bell v. Imperial Palace Hotel/Casino, Inc., 200 F.Supp.2d 1082, 1089 (E.D.Mo. 2001) (weighing all five factors for the minimum contacts analysis). Because the other factors weigh against assertion of jurisdiction, the Court finds the connections with North Dakota are too tenuous to satisfy the specific jurisdiction component of due process analysis. See Porter, 293 F.3d at 1076-77; Falkirk Mining Co., 906 F.2d at 376; Piper v. Kassel, 817 F.Supp. 802, 805 (E.D. Mo. 1993). The general jurisdiction component, which requires continuous and systematic general business contacts with the forum, see Burlington Indus., Inc, 97 F.3d at 1103, is not remotely satisfied.

Consideration of the final two factors does not change the Court's conclusion. Although North Dakota has an interest in providing a forum for its residents, in this case the State itself, that interest cannot make up for the absence of minimum contacts. Falkirk Mining Co., 906 F.2d at 376. It is also important to note that the Court is not dismissing the action; rather, it is transferring it to Massachusetts, where North Dakota Mill will have a full opportunity to litigate it. See Drayton Enterprises L.L.C., 142 F.Supp.2d at 1185. The final factor - the convenience of the parties - is essentially a wash. Witnesses and documents are likely located in both Massachusetts and North Dakota. North Dakota Mill will incur additional expenses to litigate in Massachusetts and Crystal

Warehouse would incur additional expenses to travel to North Dakota. Thus, it is convenient for

North Dakota Mill to litigate here, but it is convenient for Crystal Warehouse to litigate in

Massachusetts. Therefore, based on consideration of all the factors and the facts of this case, the

Court concludes it lacks personal jurisdiction over Defendant. The motion to dismiss is **DENIED**;

however, as explained below, the Court orders the case **TRANSFERRED**.

## 2. Venue

The next issue is venue. Under 28 U.S.C. § 1391, venue is proper in civil federal diversity

cases in any of three places:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

In this case, North Dakota Mill could have brought this action in the District of

Massachusetts where Defendant is located pursuant to subsection (1), but it chose not to do so.

Further, it is undisputed that Defendant is a Massachusetts corporation with its only places of

business located in Massachusetts. All of the actual conduct in this case giving rise to the claims

took place in Massachusetts. No allegation has been made that Defendant did anything in North

Dakota. Therefore, North Dakota is not a proper venue under subsection (2) as a district in which

a substantial part of the property at issue is situated or where a substantial part of the events or

omissions giving rise to the claim occurred. Because there is another district in which this action

could have been brought and the Court has determined it lacks personal jurisdiction over Defendant,

the Court concludes North Dakota is not the proper venue for this action. See 28 U.S.C. § 1391; see

also Schultz v. Ary, 175 F.Supp.2d 959, 965 (W.D. Mich. 2001).

When venue is improper, the Court may dismiss the case, or, in the interest of justice, transfer the case to a district court in which the case could have been brought. 28 U.S.C. § 1406(a); Mayo Clinic v. Kaiser, 383 F.2d 653, 655-56 (8th Cir. 1967). Once a court determines that it lacks proper venue, it may transfer the case to an appropriate district even if the party's motion only asked for dismissal. See United Fin. Mortgage Corp. v. Bayshores Funding Corp., 245 F.Supp.2d 884, 896 (N.D. Ill. 2002) (stating it is appropriate for court to consider a transfer under 28 U.S.C. § 1406 sua sponte); Schultz v. Ary, 175 F.Supp.2d 959, 964 (W.D. Mich. 2001) (noting the failure of the defendants to raise a challenge to the venue of the action does not prevent the court from addressing the issue sua sponte, particularly when a defendant has sought dismissal for lack of personal jurisdiction); Favereau v. United States, 44 F.Supp.2d 68, 72 (D. Me. 1999) (finding that although defendants made no motion to transfer the case, a transfer of venue may be made by the court sua sponte if venue is improper).

The Court notes that personal jurisdiction over a defendant is not a prerequisite for a district court to transfer a case pursuant to 28 U.S.C. § 1406(a). Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465-66 (1962); Drayton Enterprises, L.L.C., 142 F.Supp.2d at 1187. Thus, the issue is whether the Court should dismiss or transfer this action. The Court concludes transfer is preferable to dismissal. Dismissal would simply require the case to begin again in another court. Therefore, the Court concludes that the interests of justice direct the Court to transfer the case, pursuant to 28 U.S.C. § 1406(a), to the District of Massachusetts.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **DENIED**. However, the Court **ORDERS** that the case is **TRANSFERRED TO THE DISTRICT OF MASSACHUSETTS**. The

Court orders and directs the Clerk to effectuate this transfer in the usual and customary manner.

**IT IS SO ORDERED.**

Dated this 6th day of November, 2003.

Ralph R. Erickson, District Judge
United States District Court

NOTICE OF ENTRY
Take notice that the original of this
copy was entered in the office of the
clerk of the United States District
Court for the District of North Dakota
on the _____7th_____ day of
_Noued mber_ 20_03_
EDWARD J. KLECKER, CLERK

By: _____
                    Deputy

*CERTIFIED COPY*
Original Filed with Clerk of Court

ATTEST:
EDWARD J. KLECKER, CLERK
United States District Court
District of North Dakota

By _____
            Deputy Clerk

11